**This order is SIGNED.**

**Dated: January 4, 2024**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

rdr

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>FELICE CABLETON-WELLS<br>and<br>DON WELLS,<br><br>Debtors. | Bankr. Case No. 19-27859<br><br>Chapter 7<br><br>Hon. Kevin R. Anderson |
| MICHAEL F. THOMSON, Chapter 7 Trustee,<br><br>Plaintiff<br><br>v.<br><br>FELICE CABLETON-WELLS and DON WELLS,<br><br>Defendants. | Adversary Proceeding No. 22-02049 |

## MEMORANDUM DECISION

The Chapter 7 bankruptcy bargain requires that in exchange for a discharge of debts, individual debtors must make their non-exempt assets available to creditors. When a debtor refuses to do so, the bargain is breached, and the discharge must be denied.

In this case, the Debtors received pre-petition tax refunds, but they did not comply with the Trustee's directive to pay them into their estate. The Trustee then obtained an order for turnover of

the tax refunds, but the Debtors again did not comply. As a result, the Trustee filed this adversary proceeding based on the Debtors' refusal to follow the turnover order. Thereafter, the Trustee entered into a settlement agreement with the Debtors for a dismissal of the adversary proceeding in exchange for their turnover of the tax refunds. But for a third time, the Debtors did not perform. Consequently, for the reasons set forth herein, the Court finds that the Debtors refused to comply with the turnover order, and thus, their discharge must be revoked under the commands of 11 U.S.C. § 727(d)(3) and 727(a)(6)(A).[1]

**I.    Findings of Fact[2]**

1. On October 24, 2019, the Debtors filed this Chapter 7 bankruptcy case.

2. Michael F. Thomson, the Plaintiff in this proceeding, is the appointed Chapter 7 Trustee (the "Trustee").

3. On December 9, 2019, the Trustee filed his notice for creditors to file claims. Ultimately, twenty-one creditors filed claims, which totaled over $99,000.

4. On January 8, 2020, the Trustee filed his directive from the first meeting of creditors (the "Directive").[3] The Directive informed the Debtors that "[i]mmediately upon receiving any Federal or State tax refunds, via check or otherwise, please turn over to the Trustee all tax refunds that belong to the bankruptcy estate."

---

[1] Unless otherwise specified, subsequent statutory references are to U.S. Code, Title 11.
[2] These findings of fact are drawn from the uncontroverted facts listed in the pretrial order, *see* Adv. Pro. No. 22-02049, ¶ 4, which the parties stipulated to at the trial in this matter; the exhibits listed in the pretrial order, *see id.* ¶ 6, to whose admission the parties also stipulated; the Debtors' testimony at the trial; and the record in this proceeding and that in the Debtors' main case, of which the Court takes judicial notice. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).
[3] Case No. 19-27859, ECF No. 10.

5. On February 5, 2020, the Court entered its order granting the Debtors a discharge under § 727.

6. On April 8, 2020, the Trustee received a letter from the Internal Revenue Service (the "IRS") indicating that the Debtors had not filed their 2016 and 2017 tax returns.[4]

7. On April 10, 2020, the Trustee's office sent an email to Debtors' counsel directing the Debtors to file all delinquent tax returns, to provide him with copies of the filed tax returns by April 14, 2020, and to turn over to him 100% of all tax refunds for 2016 and 2017.[5]

8. On October 12, 2020, January 13, 2021, and February 10, 2021, the Trustee's office sent emails to Debtors' counsel reminding the Debtors of the Trustee's directives concerning the tax returns and tax refunds. The February 10th correspondence advised the Debtors that if they did not comply with the directives, he would seek a court order mandating their compliance.[6]

9. On August 17, 2021, the Trustee's office sent an email to Debtors' counsel informing him of recent communications with the IRS that on or about March 22, 2021, the Debtors were issued a federal tax refund in the amount of $822.42. The Trustee's email directed the Debtors to provide him with copies of their tax returns and to turn over their federal tax refund. The email also advised the Debtors that if they did not comply with the directives, the Trustee would seek a court order requiring their compliance.[7]

10. On December 17, 2021, the Trustee's office sent an email to Debtors' counsel informing him of recent communications from the Utah State Tax Commission that on or about

---

[4] Adv. Pro. No. 22-02049, ECF No. 1, Ex. 1.
[5] *Id.*, Ex. 2.
[6] *Id.*, Ex. 3.
[7] *Id.*, Ex. 4.

June 4, 2020, the Debtors were issued a state tax refund of $463.00 for 2016 and a refund of $40 for 2017. The email again reminded the Debtors of the Trustee's directives and their duty to turn over their pre-petition federal and state tax refunds in the total amount of $1,325.42 (the "Tax Refunds"). The correspondence again advised the Debtors that if they did not comply with the directives, the Trustee would seek a court order mandating their compliance.[8]

11. On February 18, 2022, and because the Trustee had not received the Debtors' tax refunds, he filed his "*Trustee's Motion for Order (1) Directing Debtors to Turn Over Property of the Estate and (2) Compelling Compliance with Directives*" (the "Turnover Motion").[9]

12. The Debtors did not object or otherwise respond to the Turnover Motion.

13. On March 9, 2022, the Court entered its "*Order Granting Trustee's Motion for Order (1) Directing Debtors to Turn Over Property of the Estate and (2) Compelling Compliance with Directives*" (the "Turnover Order").[10]

14. The Turnover Order contained the following language:

By no later than March 31, 2022, the Debtors shall turn over to the Trustee the following:

    (a) $822.42 for 100% of the Debtors' 2017 federal tax refund;

    (b) $463.00 for 100% of the Debtors' 2016 state tax refund;

    (c) $40.00 for 100% of the Debtors' 2017 state tax refund; and

    (d) Copies of the Debtors' filed 2016 and 2017 state and federal tax returns.

If any of the above-described information and/or documents do not exist or are not in the Debtors' possession, the Debtors must file an affidavit to that effect and provide a copy to the Trustee no later than March 31, 2022.

If Debtors' counsel is unable to make contact with the Debtors or if contact is so sporadic that compliance with the provisions of this Order cannot be achieved, Debtors' counsel must send a declaration to the Trustee that describes the instances

---

[8] *Id.*, Ex. 5.
[9] Case No. 19-27859, ECF No. 13.
[10] Case No. 22-02049, ECF No. 1, Ex. 6.

that counsel attempted to contact the Debtors, the means used, and whether counsel was able to reach the Debtors. The Trustee must receive this declaration by March 31, 2022.

15. On March 10, 2022, the Trustee's office sent an email to Debtors' counsel notifying the Debtors of the Turnover Order and the deadlines contained therein. The email advised the Debtors that their refusal to comply with the Turnover Order would lead to the Trustee seeking a revocation of their bankruptcy discharge.[11]

16. The Debtors and their counsel received the Turnover Order and were aware of its requirements.[12]

17. By the deadline in the Turnover Order of March 31, 2022, the Debtors had not delivered to the Trustee either the tax returns or their Tax Refunds. Further, the Debtors did not provide an affidavit as to why they could not turn over the Tax Refunds, and their counsel did not provide a declaration as to the attempts and/or difficulties in communicating with the Debtors.

18. As a result of their noncompliance with the Turnover Order, the Trustee filed this adversary proceeding on June 27, 2022, seeking to revoke the Debtors' discharge under § 727(d)(2), (d)(3) and (a)(6)(A).[13]

19. On September 13, 2022, the Debtors signed a settlement with the Trustee wherein they agreed to pay $1,675.42 to the Trustee by October 31, 2022, in exchange for the dismissal of the adversary proceeding (the "Settlement").[14] The Settlement amount was based on the $1,325.42 in Tax Refunds plus the $350 filing fee for the Trustee's adversary proceeding.[15]

---

[11] *Id.*, Ex. 7.
[12] Stipulated to by the Debtors on the record during the trial.
[13] The Trustee only sought revocation at trial under § 727(d)(3) and (a)(6)(A).
[14] Case No. 19-27859, ECF No. 21, Ex. 1.
[15] Stated by the Trustee on the record during trial.

20. The Court approved the Settlement by order entered on November 4, 2022.[16]

21. The Debtors have not turned over to the Trustee any of the Tax Refunds referenced in the Turnover Order or the amount agreed to in the Settlement.

## II. Analysis

### A. Revocation of Discharge Under § 727(d)(3) and § 727(a)(6)(A).

The Trustee seeks to revoke the Debtors' discharge under § 727(d)(3) and § 727(a)(6)(A) based on their refusal to comply with the Court's Turnover Order to deliver their Tax Refunds to the Trustee. Section 727(d)(3) provides in relevant part that upon the request of the trustee, and after notice and a hearing, "the court shall revoke a discharge . . . if . . . the debtor committed an act specified in [§ 727](a)(6)." Section 727(a)(6) then states that the Court should grant the debtor a discharge unless "the debtor has refused, in the case — (A) to obey any lawful order of the court . . . ."

The term "refused" is often conflated with the word "failed," but they are not legally synonymous. Because "[t]he Bankruptcy Code does not define the term, 'refusal' . . . courts must interpret statutes according to their clear and ordinary meaning."[17] Thus, some courts have turned to BLACK'S LAW DICTIONARY, which notes that "'refusal' implies the positive denial of an application or command, or at least a mental determination not to comply."[18] Consequently, the Tenth Circuit has held that "[t]he word 'refuse,' in the context of § 727(a)(6), 'requires the Court to go further than to simply find that a debtor failed to comply with a discovery request. Rather, it must find that the disobedience was willful or intentional.'"[19]

---

[16] Case No. 19-27859, ECF No. 26.
[17] *Gillman v. Green (In re Green)*, 335 B.R. 181, 183 (Bankr. D. Utah 2005).
[18] *Id*. at 183-84 (quoting BLACK'S LAW DICTIONARY 1152 (5th ed.1979)).
[19] *Martinez v. Los Alamos Nat'l Bank (In re Martinez)*, 126 F. App'x. 890, 896 (10th Cir. 2005) (unpublished) (quoting *D'Agnese v. Cotsibas (In re Cotsibas)*, 262 B.R. 182, 186 (Bankr. D.N.H. 2001)); *see also Law Offices of Dominic J.*

Thus, for purposes of § 727(a)(6)(A), "refused" means the Debtors could have obeyed the Turnover Order, but they made an intentional choice either to not obey it or to take another action that they knew would make it improbable or impossible for them to obey it. On the other hand, if the Debtors were unaware of the Turnover Order or if it was impossible for them to comply with it, through no fault of their own, then they would have merely "failed" to comply, which does not implicate the consequence of § 727(a)(6)(A).[20]

While the loss of a discharge for refusing to turn over a relatively small tax refund may seem disproportionate, the Tenth Circuit has explained why a refusal to obey any court order merits such a consequence:

> Section 727(a)(6) gives the bankruptcy court a means to ensure debtors seeking discharge are straightforward in dealings with creditors and that they comply with its orders, and the denial of discharge for refusing to obey a court order follows the general rule that a court order "must be obeyed by the parties until it is reversed by orderly and proper proceedings."[21]

Accordingly, "a debtor's refusal to comply with a properly granted order for turnover provides a basis for the denial or revocation of discharge" under § 727(a)(6) and (d)(3).[22]

### B. The Shifting Burdens of Proof.

In prosecuting an action under § 727(a)(6)(A), the Tenth Circuit has established the following standard and burdens of proof:

> The party objecting to discharge under this provision must demonstrate that "the debtor received the order in question and failed to comply with its terms." The debtor then bears the burden of explaining his non-compliance. Ultimately, the

---

*Salfi v. Prevatt (In re Prevatt)*, 261 B.R. 54, 60-61 (Bankr. M.D. Fla. 2000) (concluding refusal under § 727(a)(6) "must be willful and not merely inadvertent").

[20] *See, e.g., Morris v. Wright (In re Wright)*, 371 B.R. 472, 480 (Bankr. D. Kan. 2007) ("A debtor's inability to comply with the order, inadvertence, mistake, or impossibility will ordinarily be insufficient to revoke a debtor's discharge.").

[21] *Layng v. Rael (In re Rael)*, 753 F. App'x. 649, 655 (10th Cir. 2018) (unpublished) (quoting *Maness v. Meyers*, 419 U.S. 449, 459 (1975)).

[22] *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 700 (Bankr. D. Colo. 2005).

court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful.[23]

The stipulated facts establish that the Debtors received the Turnover Order, understood what it required, but did not deliver the required Tax Refunds to the Trustee, *i.e.*, they could have but did not comply with its terms. Based on those stipulated facts alone, the Trustee, as the party objecting to the Debtors' discharge, has carried his initial burden under § 727(a)(6)(A) and (d)(3). Even so, the Court will detail the background underlying those facts for the sake of thoroughness.

From the beginning of their case, the Trustee informed the Debtors of their obligation to turn over their pre-petition tax refunds received after their bankruptcy filing. The Trustee followed up with the Debtors in six written communications reminding them of the duty to turn over their pre-petition tax refunds and that a failure to do so could jeopardize their discharge. Through communications from the taxing authorities, the Trustee learned of the Tax Refunds being issued to the Debtors. After making multiple, written requests to the Debtors to turn over the Tax Refunds, the Trustee brought the Turnover Motion. The Debtors did not contest or otherwise respond to the Turnover Motion, and the Court subsequently entered the Turnover Order.

The Turnover Order was clear and specific as to the year, source, and amount of the Tax Refunds to be delivered to the Trustee. It also explained that if the Debtors were not in possession of the turnover items, they had to file an affidavit explaining that circumstance. In the alternative, if Debtors' counsel was unable to communicate with the Debtors, he had to provide the Trustee with a declaration as to the details of their failure to respond. But they did not turn over the Tax Refunds, nor did they or their counsel provide the required affidavit or declaration.

---

[23] *Standiferd v. United States Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) (citations omitted).

Based on the Debtors' refusal to comply with the Directive, the Trustee's multiple requests and reminders to turn over their Tax Refunds, and the Turnover Order, the Trustee filed this adversary proceeding seeking to revoke their discharge. In response, the Debtors agreed to settle the adversary proceeding by paying to the Trustee $1,675.42 by October 31, 2022. However, the Debtors likewise refused to perform under the Settlement.

Based on these facts, the Court finds that the Trustee has carried his burden of proof by a preponderance of the evidence that the Debtors received the Turnover Order, they were aware of and understood its requirements, and yet they did not turn over the Tax Refunds to the Trustee.

### C. The Debtors Have Not Carried Their Burden of Proof in Explaining Why They Did Not Comply with the Turnover Order.

Even though the Trustee has carried his initial burden of proof, the Court "may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful."[24] Specifically, if a debtor's failure to comply is due to inadvertence, mistake, or impossibility, then that could negate a finding of willfulness.[25] For example, if the Debtors did not receive the Tax Refunds due to an offset or other legal interception, then that could excuse them from compliance with the Turnover Order due to impossibility.

However, in this case, there is no reasonable dispute that the Debtors received the Tax Refunds. While Ms. Cableton-Wells testified that she did not think that they received the refunds, this is inconsistent with the stipulated facts and the Debtors' actions in connection with the adversary proceeding and the Settlement. Specifically, the IRS and the Utah State Tax Commission reported the Debtors' receipt of the Tax Refunds. The Debtors had not previously asserted that they did not receive the Tax Refunds. And Mr. Wells testified that they used the Tax

---

[24] *Id.* (citation omitted).
[25] *See Wright*, 371 B.R. at 480.

Refunds to pay rent. The Court does not believe that Ms. Cableton-Wells was being disingenuous when she said she could not recall receiving the Tax Refunds; instead, the Court believes that at the time of the trial, she honestly did not have a specific recollection of receiving them.

Therefore, the Debtors' explanation for not complying with the Turnover Order is that they used the Tax Refunds to pay a pressing debt—their monthly rent—and they otherwise did not have the financial ability to comply with the Turnover Order. The Court does not doubt that the Debtors were and are in difficult financial circumstances—even with the benefit of the bankruptcy stay and a discharge of over $99,000 in debt.[26] And choosing between complying with a Court order or being evicted can be a no-win scenario. But this does not constitute impossibility under § 727(a)(6)(A). The Debtors voluntarily entered into the bankruptcy bargain for a financial fresh start through the automatic stay and forgiveness of $99,000 in debt in exchange for turning over their only non-exempt asset: the $1,325.42 in Tax Refunds. The status of the Tax Refunds as a non-exempt asset emphasizes that they no longer belonged to the Debtors, but rather to the Debtors' bankruptcy estate for distribution to their creditors. Thus, from the perspective of the Bankruptcy Code, the Tax Refunds were not the Debtors' money to spend—regardless of how desperately they needed these funds to make rent. On multiple occasions, the Debtors were informed of this fact and instructed that the Tax Refunds needed to be delivered to the Trustee once they received them.

Thus, while the Court is empathetic to the Debtors' hardships and difficult choices, they were informed of their responsibilities before receiving the Tax Refunds. They were also in the best position to leverage the benefits of their bankruptcy filing and to control the disposition of their funds to ensure that property of their estate—the Tax Refunds—went to their pre-petition

---

[26] See claims register in Case No. 19-27859 showing twenty-one filed claims totaling $99,554.85.

creditors rather than to their post-petition expenses. In essence, the Debtors breached their bankruptcy bargain by denying their creditors the funds, no matter how small, to which such creditors were entitled under bankruptcy law. And while the Tax Refunds are arguably a trivial amount with negligible impact on the return to creditors, the Court cannot find a *de minimis* exception to the Debtors' duty, even under their very difficult financial circumstances, to turn over tax refunds that were property of their estate, that they received and controlled, and that were subject to a valid turnover order.

In *Rainsdon v. Anderson (In re Anderson)*,[27] the debtors were likewise subject to turnover orders for a $392 tax refund and $1,539.52 from their bank accounts. The husband used the tax refund to pay child support, but the court nonetheless found this excuse unavailing:

> The Court acknowledges that [the husband] might have felt this was a logical choice because his state tax refunds normally were withheld and applied by the State to his child support obligation. However, what is significant here is that he deliberately *chose* to do something contrary to the Court's order.[28]

In *Hopkins v. Nebeker (In re Nebeker)*,[29] the debtor refused to turn over vehicles to the trustee, arguing that he could not make a living without them. The bankruptcy court held that this reason did not excuse compliance with the court's turnover order:

> But when Debtor sought the protection of the bankruptcy court to shield him from his creditors, he "assumed a duty to participate in that proceeding by obeying the court's lawful orders." And although denial, or in this case revocation, of discharge "can work a serious deprivation" it "is not to be read, however, as minimizing the debtor's offense in disobeying a lawful order." The integrity of the bankruptcy process requires that debtors "among other things . . . surrender all property of the estate to [the] trustee . . . and obey the bankruptcy court's lawful orders."[30]

---

[27] *Rainsdon v. Anderson (In re Anderson)*, 526 B.R. 821 (Bankr. D. Idaho 2015).
[28] *Id.* at 827.
[29] *Hopkins v. Nebeker (In re Nebeker)*, 2018 Bankr. LEXIS 316, 2018 WL 735340 (Bankr. D. Idaho Feb. 6, 2018).
[30] *Id.* at *11-12 (quoting *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985) and *Onubah v. Zamora (In re Onubah)*, 375 B.R. 549, 557 (9th Cir. BAP 2007)).

The Court did find a decision that applied a *de minimis* standard, but it is factually distinguishable. In *Cyperski v. Corbin (In re Corbin)*,[31] the court held that no bankruptcy purpose was served by revoking the debtor's discharge because no creditors had filed claims, thus there was no prejudice from the refusal to turn over the tax refund. However, in the Debtors' case, there are twenty-one claims totaling over $99,000.

Thus, the Debtors are without a sufficient explanation to excuse them from compliance with the Turnover Order. The evidence establishes that the Trustee took extensive efforts to remind and assist the Debtors in fulfilling their obligations under Chapter 7 to retain their discharge. These included multiple communications and then the Settlement that only required a payment of $1,675.42 to resolve the issue. Indeed, at the trial, the Trustee indicated that if the Debtors were to tender the Settlement amount before the entry of this decision, he would seek to dismiss this adversary proceeding, and the Debtors could retain their discharge. Unfortunately, this was still a financial bridge too far.

Therefore, the Court finds that before receiving the Tax Refunds, the Debtors were informed of and understood their duty to deliver them to the Trustee. After receiving the Tax Refunds, the Debtors did not do so, and the Trustee subsequently obtained a court order requiring the Debtors to turn over the Tax Refunds. The Debtors received a copy of the Turnover Order and understood its directives, but they still did not deliver the Tax Refunds to the Trustee. After the Trustee filed this adversary proceeding, the Debtors were given opportunities to comply with the Turnover Order and retain their discharge, but they again did not pay the Tax Refunds to the Trustee. The Court concludes, on these facts, that the Debtors' failure to turn over the Tax Refunds was not due to impossibility or a lack of awareness on their part, but rather to their willful and

---

[31] *Cyperski v. Corbin (In re Corbin)*, 2009 Bankr. LEXIS 1431, 2009 WL 1587355 (Bankr. N.D. Ohio Jan. 14, 2009).

intentional decision to use the Tax Refunds to pay their post-petition rent. In short, the Debtors refused to comply with the Turnover Order. Finally, the amount of the Tax Refunds and the Debtors' disposition of those funds do not excuse under § 727(a)(6)(A) their refusal to comply with the Turnover Order.

III. **Conclusion**

In summary, the Court finds that the Trustee has carried his burden of proof by a preponderance of the evidence to show that the Debtors refused to comply with the Turnover Order. Because the Chapter 7 bargain requires that, in exchange for a discharge, debtors must turn over to the trustee all non-exempt assets for distribution to creditors, and because court orders cannot be intentionally ignored, the Bankruptcy Code provides that a debtor's refusal to turn over property of the bankruptcy estate, especially after the entry of a court order to do so, merits the denial or revocation of that debtor's discharge. While this principle produces a harsh result in this case given the amount of the Tax Refunds compared to the pool of claims, "Congress could not have expressed its will more clearly than it did in § 727. A debtor who does not honor [his or] her obligation[] to turn over estate property is not a debtor to whom this Court is empowered to grant a discharge."[32] Therefore, to comply with the rule of law and to maintain the integrity of the bankruptcy system, the Court must reluctantly revoke the Debtors' discharge.

_____END OF DOCUMENT_____

---

[32] *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 702 (Bankr. D. Colo. 2005).

———ooo0ooo———

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Michael F. Thomson | thomsonm@gtlaw.com, stuverm@gtlaw.com, Suzanne.Williams@gtlaw.com, ut17@ecfcbis.com, mike-thomson-2584@ecf.pacerpro.com |
| Brent K. Wamsley | bkwamsley@yahoo.com, wamsley.brentr101649@notify.bestcase.com |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

    Felice Cableton-Wells
    Don Wells
    1221 South Stewart St.
    Salt Lake City, UT 84104